**490**

George J. HOHMAN, Plaintiff-Appellant,

v.

Cornelius HOGAN, Individually and in his capacity as Commissioner of Corrections for the State of Vermont, Gene Riley, Individually and in his capacity as Assistant Director of Adult Facilities, Department of Corrections for the State of Vermont, Michael Chater, Individually and in his capacity as Superintendent of the Rutland Community Correctional Center, Department of Corrections for the State of Vermont, Richard Bashaw, Individually and in his capacity as Superintendent of the St. Albans Diagnostic and Treatment Facility, Department of Corrections for the State of Vermont, Defendants-Appellees.

No. 600, Docket 78–2106.

United States Court of Appeals, Second Circuit.

Submitted March 15, 1979.

Decided April 5, 1979.

George J. Hohman, pro se.

Peter B. Brittin, and Peter M. Nowlan, Asst. Attys. Gen., Dept. of Corrections, Montpelier, Vt., for defendants-appellees.

Before KAUFMAN, Chief Judge, GURFEIN, Circuit Judge, and MISHLER, District Judge.*

PER CURIAM:

Appellant, formerly an inmate in correctional facilities in the State of Vermont, commenced this action under 42 U.S.C. § 1983 against the Commissioner of Corrections for Vermont and other state prison officials. Appellant's complaint, filed *pro se* and *in forma pauperis*, alleges that he was deprived of his constitutional rights during incarceration in *segregated* confinement in the maximum security wing of the St. Albans Diagnostic Treatment and Correctional Facility for a period of approximately two weeks in March 1978. It seeks, *inter alia*, compensatory and punitive damages.

Defendants filed an answer to the complaint which included a motion to dismiss for failure to state a claim on which relief could be granted. After both sides were given an opportunity to file papers, the motion to dismiss was granted by the United States District Court for the District of Vermont (the Hon. James S. Holden, Chief Judge) in a memorandum decision and order dated August 29, 1978. The central issue on this appeal is whether the District Court erred in dismissing appellant's *pro se* complaint without a trial. Because we think there are material questions of fact,

---

* Honorable Jacob Mishler, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

we reverse and remand for further proceedings.[1]

Appellant was convicted of second degree murder in a Vermont district court on November 13, 1976. He was sentenced on December 3, 1976 to a prison term of from thirty years to life.[2] Appellant was first incarcerated in the Rutland Community Correctional Center (Rutland), where he was to await transfer to a federal prison. On February 19, 1977, he escaped.

Appellant turned himself in to federal authorities in Illinois on April 7, 1977. He waived extradition and was returned to Vermont, where he was convicted on escape charges, and sentenced to an additional two years in prison. Appellant was imprisoned, before this conviction, in St. Albans Correctional Diagnostic and Treatment Facility (St. Albans). There he was placed in the maximum security "D" wing but was not placed in segregated confinement. After sentencing for the escape, he was transferred to the custody of the Federal Bureau of Prisons apparently under a contract for prisoner custody which the State of Vermont has with the Federal Government.

On February 8, 1978, appellant was again returned to Vermont so that he could be available for the trial of a co-escapee. During the trial he was held at Rutland, but upon completion of the trial he was transferred, on March 3, 1978, to St. Albans where, according to the transfer order, "he [could] be more safely and securely housed . . . while . . . awaiting return to an out of state facility." He was again placed in the St. Albans maximum security wing, but this time he was segregated from other prisoners and locked into his cell for all but one hour a day. Appellant remained in such segregated confinement for about two weeks. On March 17, 1978 he was returned to the federal prison system. This action was filed on March 31, 1978.

Appellant's complaint alleges in some detail the events leading up to his segregated confinement. Assuming those allegations to be true, *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)(per curiam), the complaint shows the following:

1. In December, 1977 appellant had filed a civil rights action against Vermont prison authorities claiming that, while in Vermont prisons, he had been denied access to legal publications. The action was still pending when the events complained of in this case occurred.

2. On or about February 24, 1978, while at Rutland, appellant witnessed an altercation between an inmate and a Correctional Officer. Shortly thereafter, he was interviewed concerning the incident and gave a signed statement which was in part responsible for the officer's suspension.

The complaint also alleges that on February 28, 1978, he was told informally that he was going to be transferred, and on March 3, 1978 he was brought before the Superintendent of Rutland and other officers for a "transfer hearing". He was told at that meeting that he would be sent to St. Albans, and that the Superintendent there had been informed that he was "no problem". Appellant alleges that he "agreed" to the transfer on the understanding that he would be placed in the maximum security wing but would suffer no loss of the privileges that the "non-punitive" inmates of the wing normally have. Yet when he arrived at St. Albans he was told that he

---

1. Our disposition makes it unnecessary to consider appellant's subsidiary contentions concerning a "status conference" held by the District Court on July 6, 1978, which appellant was unable to attend because of his incarceration in a federal prison in Illinois, and an alleged inaccuracy in the statement of facts in the opinion below.

2. The appellant's conviction was reversed by the Vermont Supreme Court in an order filed August 2, 1978. As the District Court noted, this reversal does not alter the status of the present case.

was an escapee and "trouble maker," and that accordingly he would be "locked-in." He was then placed in segregated confinement in a unit that is reserved for inmates who are guilty of "infractions of institutional rules and regulations," although appellant alleges that he had never been subject to any disciplinary action for such institutional violations.

Finally, the complaint alleges that there was space for him in the non-segregated unit of the maximum security wing, that two inmates who had also escaped were not placed in segregated confinement, and that another inmate who had been found guilty of participating in the same escape attempt as appellant's had been placed in a different unit of St. Albans that was not subject to maximum security restrictions.

The narrow question in this case is whether the appellant's allegations raise material factual issues that may not be summarily dismissed. Keeping in mind, as we must, that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam), we conclude that factual issues have been presented which could, if proved, state a cause of action for deprivation of constitutional rights. As in *Haines, supra,* "[w]e cannot say with assurance that . . . it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 520–21, 92 S.Ct. at 596, *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

We agree with the District Court's conclusion that, in view of the broad discretion over placement and transfer of prisoners which Vermont law vests in its prison authorities, *see* 28 Vt.Stat.Ann. §§ 701, 702 (Supp.1976), appellant's claim of a due process right to a hearing before transfer to lock-in status at St. Albans is without substance. *See Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).[3] And, indeed, appellant concedes that he consented to the transfer, though he claims that he was promised non-segregated confinement as a condition to his consent. The complaint, drafted without the aid of a lawyer, cannot be read, however, as limited solely to the issue of whether a hearing was required. The facts pleaded can support a claim of a different character, that the transfer arbitrarily punished appellant either for attempting to assert his legal rights or for signing a statement attesting to misconduct by a prison official.

In *Meachum, supra,* the majority opinion noted that a state may subject a prisoner to the rules of its prison system "so long as the conditions of confinement do not otherwise violate the Constitution." 427 U.S. at 224, 96 S.Ct. at 2538.

In *Montanye, supra,* the determination that transfers from one prison to another without a hearing did not violate the Due Process clause was said to apply even if the transfers "are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive." 427 U.S. at 242, 96 S.Ct. at 2547. In dissent, however, Mr. Justice Stevens noted, "that the allegations of [respondent's] complaint are sufficient to require a trial of his claim that the transfer was made in retribution for his exercise of protected rights [circulating a petition, communicating with a court, and rendering legal assistance to other inmates]." Mr. Justice Stevens added:

---

**3.** In *Rebideau v. Stoneman,* 575 F.2d 31 (2d Cir. 1978) (per curiam), this court assumed without deciding that a prisoner in Vermont would have a due process right to a statement of reasons before being transferred to an out of state facility. The court also held that in the circumstances of that case any such right was fully satisfied. In *State v. Carlson,* 133 Vt. 562, 349 A.2d 237, 238 (1975), however, the Vermont Supreme Court held that "[n]othing in our statutes requires that notice and hearing be provided" to prisoners about to be transferred.

I do not understand the Court to disagree with this analysis, and assume that the Court of Appeals, consistently with this Court's mandate, may direct the District Court to conduct a trial.

427 U.S. at 244, 96 S.Ct. at 2548 (footnote omitted).

On remand, *Haymes v. Montanye,* 547 F.2d 188 (2d Cir. 1976), this court did direct a trial because there were "genuine issues of material fact as to whether Haymes' transfer violated either his first amendment rights or his federally protected right to help prisoners prepare habeas corpus petitions." 547 F.2d at 189. Certiorari was denied, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). *See also Corby v. Conboy,* 457 F.2d 251, 253 (2d Cir. 1972); *Sostre v. McGinnis,* 442 F.2d 178, 188·89 (2d Cir. 1971) (en banc), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972).

We must determine, therefore, whether the complaint raises issues of material fact. The factual issue posed is whether the transfer *and* the segregated confinement were impermissible violations of appellant's constitutional rights. To make that determination, we must look at the complaint.

The complaint specifically refers to both appellant's pending civil action and his recent involvement in a disciplinary proceeding against a prison official as facts relevant to the motivation for his transfer. It also alleges, and at this point we must assume as true, that his segregated confinement cannot be justified on the ground that appellant had violated institutional rules. The complaint further attempts to show that appellant's prior escape cannot be the reason for his segregated confinement, both because appellant had not been so confined during a prior stay at St. Albans after his escape, and because other escapees incarcerated in St. Albans have not been so stringently confined. In light of these allegations, we think the complaint sufficiently alleges that the transfer to segregated confinement was a retaliatory measure intended to punish appellant for attempts to exercise his legal rights within the prison community. Thus the complaint goes further than simply to allege that the transfer violated some general "liberty" right of appellant, which was the concern in *Meachum* and *Montanye, supra.* It asserts a claim for relief on the ground that not only the transfer to another prison but also the inflicting of *segregated* punishment were retaliation for the exercise of appellant's lawful rights as a prisoner. The appellees deny that there was any such motivation.[4]

We do not know whether appellant can prove these allegations, but he must be given the right to try.

Reversed and remanded for trial.

---

4. The appellees draw our attention to findings of the District Court in *Martin v. Hogan,* Civ. No. 77–125 (D.Vt. Nov. 29, 1977) which indicate that institutional violations are not the sole basis on which prisoners may be transferred to "lock-in" status at St. Albans. The court found that prisoners receive "lock-in" status as the result of "the Correctional Department's determination that they are high risk residents", and that this "determination is based on the crime with which [they] are charged, their criminal records, their alleged escape attempts from other Vermont correctional facilities and the disciplinary problems which they have presented while in confinement." These findings do not dispose of this case, however, since the question is whether another factor— retaliation for the exercise of civil rights—motivated appellant's transfer. Appellees will certainly have the opportunity in further proceedings to prove that one or more of the enumerated grounds in *Martin,* rather than a desire to punish appellant for the exercise of his legal rights, served as the basis for the transfer.