**Darryl RESPRESS, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, and Joseph C. Snow, Defendants.**

**No. 82 Civ. 6782 (JFK).**

United States District Court,
S.D. New York.

March 16, 1984.

Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for plaintiff; Lynne M. Fischman, Karen M. Cullen, New York City, of counsel.

Robert Abrams, Atty. Gen., New York City, for defendants; JoAnn M. Becker, Asst. Atty. Gen., New York City, of counsel.

## OPINION

JOHN F. KEENAN, District Judge:

This dispute arises out of plaintiff's August, 1982 transfer from the Mid-Orange Correctional Facility ("MOCF"), a medium

security prison, to Clinton Correctional Facility ("Clinton"), a maximum security prison. Plaintiff filed this action under title 42, Section 1983 of the United States Code, alleging that such transfer was in retaliation for the exercise of his First Amendment right to free speech. Plaintiff seeks actual and punitive damages, an injunction transferring him to a penal institution having a security grading no greater than medium B[1] and requiring defendants to expunge all records of, or reference to, plaintiff's transfer to Clinton, the events leading up to the transfer and the existence of this lawsuit, and a declaration that plaintiff's transfer from MOCF to Clinton was unconstitutional.

Plaintiff now moves, pursuant to rule 56(a) of the Federal Rules of Civil Procedure, for partial summary judgment on the issue of liability. Defendants cross-move for summary judgment dismissing the action.

For the reasons discussed hereafter, plaintiff's motion is denied and defendants' cross-motions are granted.

The following facts underly the current dispute.

Plaintiff was confined at MOCF from February, 1982 through August, 1982. During the period of his confinement at MOCF, plaintiff incurred a total of four disciplinary charges. As a result of the first three, a Superintendent's Proceeding was brought against plaintiff. That resulted in his confinement to the special housing unit at MOCF for 16 days.[2] After the Superintendent's Proceeding, plaintiff began writing letters to officials at the Department of Correctional Services criticizing various policies and practices at MOCF. Copies of all such letters were sent to defendant Snow who at all relevant times was the Superintendent of MOCF and responsible for the implementation of all ap-

---

1. As plaintiff was paroled on January 19, 1984 his claim for injunctive relief is now moot insofar as it seeks transfer.

2. Although no attempt was made at that time to transfer plaintiff to a more structured facility, a policy implemented in the fall of 1982 and pres-

ently in effect requires any inmate at MOCF who is found guilty in a Superintendent's Proceeding, (now called a "Tier III Hearing"), to promptly be transferred to a more structured facility. Hitchen Affidavit ¶ 6.

plicable rules, regulations and policies at MOCF, as well as for the welfare of all its inmates. On August 4, 1982 plaintiff sent a letter to defendant Snow which defendants construe as falsely accusing Snow of misappropriating funds from the prison commissary.

On August 9, 1982, Snow telephoned Michael Hitchen, a Classification Analyst in the New York State Department of Correctional Services' Division of Classification and Movement. That division makes all transfer decisions relating to inmates. Snow asked Hitchen to transfer plaintiff to a more structured facility. Snow based his request on (1) the August 4th letter; and (2) a report Snow had received approximately three weeks earlier that plaintiff and another inmate had begun and spread a rumor relative to Snow and other prison officials to the effect that they had been charged with misappropriation of prison funds and arrested.[3] Subsequent to the telephone conversation, Hitchen had plaintiff placed in detention in preparation for transfer. He was transferred to Clinton two days later, on August 11, 1982.

Prior to plaintiff's transfer to Clinton, he and another inmate had filed a civil rights complaint in this District challenging the conditions of their confinement at MOCF. Following plaintiff's transfer to Clinton, on August 17th and again on September 7, 1982, plaintiff moved in that action for an order transferring him back to MOCF, alleging that his transfer to Clinton had been in retaliation for the filing of the then pending complaint. Judge Gagliardi found that plaintiff's transfer appeared to be for disciplinary reasons and denied the motions on September 28, 1982.[4] In August of 1982, one month prior to Judge Gagliardi's denial of the motions to transfer plaintiff to MOCF, the instant action ensued.

## DISCUSSION

 It is well settled that state prison officials are afforded broad discretion to transfer prisoners for any reason or no reason at all. *Montanye v. Haymes*, 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976); *Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976). (Holding that the Due Process Clause of the Fourteenth Amendment does not entitle a state prisoner to a factfinding hearing when he is transferred from one prison to another where conditions are less favorable.) This is not to say, however, that prisoners may be transferred for unconstitutional reasons. Prisoners may not be transferred solely in retaliation for the exercise of their constitutional rights.

 Incarceration necessitates the withdrawal of those First Amendment rights which are inconsistent with an inmate's "status as a prisoner or with legitimate penological objectives of the corrections system." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 129, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977) citing *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). In determining the extent to which constitutional rights are withdrawn upon incarceration, the Supreme Court has mandated that wide-ranging deference is to be accorded the operational considerations of prison administrators. *Id.*, at 129–30, 97 S.Ct. at 2539–40. Recognized legitimate considerations include the ability of prison officials to ensure prison security against escape, maintain internal order and discipline, and further rehabilitation of prisoners. *Procunier v. Martinez*, 416 U.S. 396, 412, 94 S.Ct. 1800, 1810, 40 L.Ed.2d 224 (1974).

 It follows, therefore, that to the extent that a prisoner's exercise of his rights would conflict with the capacity of prison officials to accomplish such legitimate prison objectives, the rights implicated do not survive incarceration. Absent such conflict, prisoners retain their pre-incarcera-

---

**3.** These two reasons are also set forth by Snow in a letter, dated August 9th, from him to Hitchen.

**4.** On September 26, 1983, summary judgment, dismissing the complaint, was granted for defendants.

tion constitutional rights, the exercise of which may not lawfully be punished by retaliatory transfer. *Montanye*, 427 U.S. at 244, 96 S.Ct. at 2548; n. * (Stevens, J., dissenting); *Haymes v. Montanye*, 547 F.2d 188, 190 (2d Cir.1976) (on remand), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977).

The ultimate issue in this case is whether plaintiff's transfer was reasonably motivated to further legitimate prison objectives. If not, it was in violation of the First Amendment.

*Plaintiff's Motion For Summary Judgment*

Plaintiff contends that the reasons for his transfer to Clinton were his alleged rumor-spreading and the August 4th letter. It is defendants' position that while the factors raised by plaintiff initiated his transfer, his disciplinary record and the rumor-spreading, not the August 4th letter were considered in reaching the actual decision to transfer him. Moreover, defendants allege, the decision as to where plaintiff should be transferred, i.e., to a maximum security facility rather than a different medium security one, would not have been made but for his disciplinary record.[5] *See* Hitchen Affidavit ¶ 17.

In order to prevail in his motion for summary judgment, plaintiff must establish that no dispute exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975). Material to this dispute is the basis for the decision to transfer plaintiff to a maximum security facility rather than to another medium security

facility. Absent evidence that an unconstitutional reason factored in the decision as to where, as well as whether, plaintiff was to be transferred, the "punishment" element inherent in a charge of retaliatory transfer is lacking.

 Plaintiff has failed to show that there exists no genuine issue of material fact as to the factors that motivated the decision to transfer him from MOCF to a less desirable facility. Absent such showing, it would be improper to grant plaintiff's motion for summary judgment unless, as a matter of law, plaintiff were entitled to judgment in his favor even if defendants' version of the facts is true. If, as defendants contend, plaintiff's disciplinary record was the "but for" motivation for the decision to transfer him to Clinton, plaintiff cannot prevail. On a claim of retaliatory transfer, plaintiff bears the burden of proving that but for the exercise of his First Amendment right, he would not have been transferred. *Hasan Jamal Abdul Majid v. Henderson*, 533 F.Supp. 1257, 1270 (N.D.N.Y.1982) citing *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979). Based upon the deposition and affidavit of Mr. Hitchen, therefore, this Court concludes that plaintiff has failed to carry his burden.[6]

*Defendants' Motions For Summary Judgment*

A. *Motions to Dismiss Plaintiff's Prayers for Injunctive Relief*

 Plaintiff was paroled on January 19, 1984. His prayers for injunctive relief are, therefore, moot so far as they seek transfer to a "medium B" facility and enjoinment of defendants from taking any retali-

---

**5.** Hitchen stated that if plaintiff's transfer had been motivated by his rumor spreading alone, rather than by his overall disciplinary record, Hitchen would have characterized the reason for the transfer on Respress' record as "seperation of inmates", rather than "unsuitable behavior" and would have transferred him to a medium rather than maximum security facility. Hitchen Affidavit ¶ 17.

**6.** Even if there were no material factual dispute, this Court would be inclined to deny plaintiff's

motion. As will be discussed more fully in the portion of this Opinion which addresses defendant Snow's cross-motion, defendants have rebutted any possible prima facie case of retaliatory transfer by producing evidence that the transfer was motivated by considerations of prison discipline. Plaintiff has not sustained his burden of proving that his transfer was not reasonably in furtherance of such a legitimate prison objective.

atory action against plaintiff for prosecuting this lawsuit.

■ Plaintiff's prayer for relief that his transfer to Clinton be expunged from his inmate record is impossible of accomplishment. As defendants point out, one cannot erase the entire record that an inmate was housed at a particular facility. His medical, counseling and inmate legal files all contain history of his presence at Clinton and must continue to do so to maintain adequate and accurate records. Moreover, there is no reason to expunge from plaintiff's records all references to the events leading up to his transfer or this lawsuit. Clearly, they had no impact on his eligibility for parole. For these reasons, defendants' motions for summary judgment are granted insofar as they seek dismissal of the plaintiff's prayers for injunctive relief.

### B. Defendant Coughlin's Motion for Summary Judgment on the Issue of Damages

Defendant Thomas Coughlin, the Commissioner of the New York State Department of Correctional Services (the "Department"), contends that he was neither personally involved in any way in the decision to transfer plaintiff, nor did he set any policy, rule or regulation responsible for the transfer and that he, therefore, cannot be held liable under section 1983. Plaintiff has alleged in his amended complaint that Coughlin, in his position as Commissioner, was responsible for the overall operation of all institutions under the Department's jurisdiction (including MOCF), for promulgating and maintaining statewide rules, regulations and policies regarding the rights and privileges at penal facilities, and for supervising Department personnel during the relevant period. Plaintiff has not alleged that Coughlin set any policy, promulgated any rules, or, by supervision or lack thereof, was in any way personally in-

volved in any alleged wrongdoing. Furthermore, extensive discovery, including depositions has not indicated that Coughlin was in any way involved in the decisions at issue.[7]

■ Personal involvement of a defendant is a strict prerequisite to the imposition of monetary liability. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). This does not require that the defendant personally performed the alleged wrongdoing. The personal involvement requirement is satisfied where "the failure to supervise ... was so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of the plaintiff's constitutional rights." *Owens v. Haas*, 601 F.2d 1242 (2d Cir.) *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). However, mere failure to supervise would not be sufficient to render Coughlin personally liable under Section 1983. *Id.* citing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Mere employment of alleged wrongdoers does not suffice to render Coughlin liable; the theory of *respondent superior* does not apply to civil rights suits such as this one. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) *cert. denied* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

■ Sufficient information is available in this case to determine what role, if any, Coughlin played in the events at issue. Plaintiff is no longer *pro se*; his attorneys have had time to complete discovery and to amend the complaint and have accomplished both with admirable diligence and care. Sufficient information is available, therefore, to ensure that dismissal of this complaint as to Coughlin would not be premature. *Cf. Owens*, 601 F.2d at 1247 (de-

---

**7.** The deposition of Superintendent Snow indicates that Coughlin was the addressee of letters from Respress predating the events at issue. Snow Deposition at 31–32. However, there is no evidence that Coughlin read those letters or acted upon them. Moreover, Snow expressly

denied that the earlier letters carried any weight in his decision to request plaintiff's transfer and there is no evidence that in making the decision to transfer plaintiff, Hitchen was aware of the earlier letters. *Id.* at 36–37.

nying defendant's motion to dismiss at the pleading stage to allow limited discovery and amendment of the complaint). It is, therefore, appropriate to dismiss the complaint as to Coughlin if plaintiff has not carried its burden of production with respect to him.

This case differs greatly from cases in which defendants' motions to dismiss on similar grounds have been denied. For example, *Allman v. Coughlin,* 577 F.Supp. 1440, 1448 (S.D.N.Y.1984), involved a class action suit brought by prisoners at the Westchester County Jail arising out of events that occurred there when New York State's Correctional Emergency Response Team ("CERT") regained control of the jail following a three-day takeover by its inmates. In a well reasoned opinion, Judge Goettel denied defendant Coughlin's motion to dismiss, stressing Coughlin's personal responsibility for having deployed CERT to the jail, his presence at the facility during the period of time when CERT was resecuring it, and plaintiff's allegation that Coughlin played a significant supervisory role during the relevant period. Unlike the facts alleged in *Allman,* plaintiff in the instant case has neither produced evidence nor alleged facts indicative of any conduct by Coughlin that even approaches the Second Circuit standard of "gross negligence" or "deliberate indifference."

As there is no evidence in this case of any personal involvement of defendant Coughlin in the events at issue, I find that the claims against defendant Coughlin should be dismissed and his motion must, therefore, be granted.

### C. *Defendant Snow's Motion for Summary Judgment on the Issue of Damages*

Defendant contends that even if the decision to transfer Respress was, as plaintiff alleges,[8] motivated by defendant's belief that plaintiff was starting and spreading rumors, that decision was reasonable to preserve internal order and discipline at

MOCF. Plaintiff, in opposing defendant's motion, argues that: (1) he was not, in fact, responsible for the initiation or spreading of rumors; (2) if he were so responsible, transferring him in retaliation for such acts was not reasonable to further any legitimate prison objective; and (3) if it were reasonable to further legitimate prison objective, transferring him was not the least restrictive means of furthering same objective.

At the outset, it must be noted that plaintiff's contention that Respress did not, in fact, initiate or spread the rumors in question does not preclude granting defendant's motion for summary judgment. Defendant Snow must show not that Respress actually initiated or spread the rumors, but rather, that Snow had reasonable basis for his belief that Respress was the responsible party. Defendant has met his burden in this respect. Snow's belief was based on an inmate source and on a report by Lieutenant Thompson, a long-term employee, both of whose information Snow had found to be reliable and useful in the past. *See* Snow deposition, pp. 52–57. Certainly, Snow was entitled to rely upon his staff for information about what was happening at MOCF.

Having determined that Snow's belief that plaintiff was responsible for rumor-spreading was reasonable, this Court must determine whether or not, as a matter of law, defendant has established that the decision to transfer Respress to Clinton was reasonable to further any legitimate prison objective.

The affidavits and depositions of defendant Snow and the other Correctional Department employees evidence that the degree of security at MOCF and the character of its inmates is such that the relationship between inmates and prison officials is of crucial importance to the maintenance of internal order and the successfulness of its rehabilitation program. MOCF is not an especially secure facility. It is structured

---

**8.** Because for the purposes of defendant's motion all material factual disputes must be resolved in plaintiff's favor, it must be presumed that plaintiff's disciplinary record played no part in the decision to transfer him to Clinton.

as an open compound of cottages surrounded by a chain link fence topped by a single strand of barbed wire. The inmates are not locked in cells; they live in open dormitory-like rooms with considerable freedom to intermingle in relatively large groups. The Thompson, Hitchen, and Snow affidavits demonstrate that in such low-medium facilities, rumors which undermine the credibility of prison officials, such as those they believed Respress to be spreading, pose a considerable threat to the ability of the corrections staff to maintain internal order and discipline. Defendants contend that their concern over the potential effect of the rumors being spread was exacerbated by a general state of unrest existing at MOCF during the summer of 1982. In support of this, they point to the transfer out of MOCF of a total of 35 inmates due to unsuitable behavior during the months of July and August. That constituted more than one third of the total number of inmates transferred in all of 1982 for unsuitable behavior.

▆▆▆ In light of the overall conditions existing at MOCF when Snow was informed that Respress was spreading rumors, Snow was clearly not unreasonable in perceiving Respress' continued presence at MOCF, or at an institution with a similarly low level of security, to pose a threat to prison order. As the Supreme Court stated in *Hewitt v. Helms*:

> In assessing the seriousness of a threat to institutional security prison administrators ... must consider the character of the inmates confined in the institution, recent and long-standing relations between prisoners and guards, prisoners *inter se,* and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; *rumor, reputation and even more imponderable factors may suffice to spark potentially disastrous incidents.* (Emphasis added).

459 U.S. 460, 103 S.Ct. 864, 872–3, 74 L.Ed.2d 675.

In addition to considerations of prison discipline, the decision to transfer plaintiff was reasonably in furtherance of the legitimate goal of prisoner rehabilitation. The type of behavior which the authorities believed, in good faith, that Respress was engaging in, could interfere with the rehabilitation program at MOCF and those at facilities like it. The success of such programs depends, in great part, upon instilling in inmates a respect for authority and the law. This is clearly interfered with by the circulation of rumors calling into question the integrity of prison officials.

▆▆▆ Finally, this Court must reject plaintiff's contention that transferring Respress to a maximum security facility was illegal because less restrictive means existed to protect any perceived threat to internal order at MOCF. "The judgment of prison officials in this context, like that of those making parole decisions, turns largely 'on purely subjective evaluations and on predictions of future behavior.'" *Hewitt,* 103 S.Ct. 864, 872–3 (citation omitted). Prison officials are best equipped to evaluate prison incidents and determine the most effective means of dealing with them. In the absence of substantial evidence in the record to indicate that the response of the prison officials to plaintiff's behavior was excessive, this court may not substitute its judgment for that of the experts. *Jones,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977). It would be inconsistent with the deference afforded the judgment of prison officials for this court to examine their decisions to determine whether the means chosen to further legitimate prison objectives was the least restrictive alternative. Moreover, this Court is not convinced that the alternatives to transfer proposed by plaintiff would have been satisfactory. Simply isolating plaintiff for a period of time might not have prevented future similar incidents. Allowing plaintiff to remain at MOCF would have required his strict supervision. The above discussion of the level of security at MOCF and its character shows that the facility was not equipped to provide such

supervision. There is no evidence that other medium security facilities would have been any better equipped than MOCF to deal with plaintiff. For these reasons, this Court grants defendants' motions and the complaint is dismissed.

SO ORDERED.