Michael JONES, Plaintiff,

v.

Thomas A. COUGHLIN, III, et al., Defendants.

No. 86 Civ. 9888 (RWS).

United States District Court,
S.D. New York.

Sept. 20, 1988.

Wagner, Davis & Gold, P.C., New York City, for plaintiff; Bonnie Reid Berkow, of counsel.

Robert Abrams, Atty. Gen., of State of N.Y., New York City, for defendants;

Frederic L. Lieberman, Asst. Atty. Gen., of counsel.

## OPINION

SWEET, District Judge.

Defendants, Commissioner of the Department of Correctional Services of the State of New York Thomas A. Coughlin ("Coughlin"), Superintendent of the Green Haven Correctional Facility ("Green Haven") Charles Scully ("Scully"), Deputy Superintendent of Green Haven Dean Riley ("Riley"), Green Haven Captain Carole Reynolds ("Reynolds"), Counselor of Green Haven and Downstate Correctional Facility ("Downstate") Gordon A. Lord ("Lord"), Green Haven Corrections Officer William Straite ("Straite"), Superintendent of Downstate Stephen Dalsheim ("Dalsheim"), Deputy Superintendent of Downstate John McGinnis ("McGinnis"), Grievance Supervisor of Downstate Richard Fiske ("Fiske"), and Chairman of the Temporary Release Committee Kevin Hunt ("Hunt") (collectively the "Defendants") have moved for summary judgment pursuant to Rule 56 Fed.R.Civ.P. dismissing the action filed against them by plaintiff Michael Jones ("Jones"). For the reasons set forth below, the motion is granted in part and denied in part.

*Facts and Prior Proceedings*

The facts of this case are fully set forth in this court's June 30, 1987 opinion, familiarity with which is assumed. *Jones v. Coughlin*, 665 F.Supp. 1040 (1987). However, a recitation of the facts relevant to this motion is in order.

Jones was incarcerated at the Green Haven Correctional Facility ("Green Haven") from April 1981 through May 1984, and at Downstate Correctional Facility ("Downstate") from May 1984 until his release on parole in July 1985. In 1981 he was involved in an incident at Green Haven which led to his bringing an action against various Green Haven personnel. That case resulted in a verdict in Jones' favor, awarding him compensatory as well as punitive damages.

According to Jones, his success in that action has resulted in systematic retaliation against him, that retaliation forming the substance of this action. That retaliation, Jones claims, took the form of trumped up misbehavior reports against which Jones was given little or no opportunity to defend: removal from the list of those eligible for visiting room privileges, systematic denial of grievances at both facilities, some of which pertained to access to legal materials, subjection to keep-lock status for false charges, confiscation of property; assignment to a menial job upon transfer to Downstate when a legal job had been promised, withdrawal of commissary and package privileges; refusal of access to stamps, and denial of work release and furlough requests upon eligibility.

Jones filed this action on December 29, 1986 pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments against the Defendants herein as well as Lieutenant P. Rivenburgh ("Rivenburgh"), Sergeant Bruce Farrell ("Farrell"), John Does 1 through 3, and various members of the New York State Division of Parole. According to the Defendants, Rivenburgh, Farrell, and the John Does were never served with process and are not represented in this action.[1]

On April 24, 1987, the defendants moved to dismiss this action for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. By opinion of June 30, 1987, this court granted in part and denied in part defendants' motion. In that opinion this court dismissed as untimely Jones' claims arising from acts allegedly occurring prior to December 29, 1983. This ruling applied both to claims arising under 42 U.S.C. § 1983, and overt acts said to make up part of the conspiracy alleged under 42 U.S.C. § 1985. Additionally, the claims against the parole board defendants were dismissed on the ground of immunity. However, defendants' motion to dismiss for failure to state a claim

---

1. References to "Defendants" in this opinion exclude Rivenburgh, Farrell and the John Does.

and for dismissal based on qualified immunity under state law was denied.

At this time, all that remains are those parts of Jones' complaint which are not time barred, and Jones' state law cause of action as these claims relate to the remaining defendants. These consist primarily of the denial of Jones' Downstate grievances and the denial of temporary release at both Green Haven and Downstate.

The grievances filed by Jones and their results are as follows:

1.[2] May 8, 1984. Upon transfer to Downstate, Jones was assigned to work in the kitchen although he had been promised a job in the law library. His grievance was resolved informally by his placement in the library within four days.

2. May 15, 1984. Jones filed a grievance claiming that his visitors were harassed by processing officers. The Inmate Grievance Resolution Committee (IGRC) investigated, receiving conflicting stories from the officers. Dalsheim's designee denied the grievance.

3. July 12/31, 1984. Jones filed a grievance claiming that officers delayed telling him that his attorney had come to see him and that consequently he missed the visit. The IGRC accepted the grievance in part, Jones agreed with this determination, and Dalsheim accepted it in part as well.

4. July 30, 1984. Jones filed a grievance complaining about the conduct of a disciplinary hearing. This was presented directly to Dalsheim who denied the grievance. An appeal to the Central Office Review Committee ("CORC") was denied by that committee which stated that Jones had not followed proper procedure for this type of grievance.

5. August 5, 1984. Jones filed a grievance with respect to the handling of a prior grievance. The grievance was accepted in part and Jones was informed that action would be taken.

6. August 6, 1984. Jones filed a grievance regarding the fact that prison officials refused to admit a visitor who did not possess proper identification. IGRC rendered a split decision, and on appeal CORC denied the grievance.

7. August 6, 1986. Jones filed a grievance complaining that Fiske improperly dismissed a prior grievance. This was referred directly to Dalsheim who denied the grievance. Subsequent referral to CORC resulted in denial because Jones had failed to follow proper procedure.

8. August 24, 1984. As a result of disciplinary procedures, which Jones claims were tainted,[3] Jones was denied commissary privileges for thirty days resulting in loss of access to stamps. The IGRC issued a split decision. Dalsheim accepted the grievance to the extent of amending the disposition of the disciplinary proceeding to permit Jones access to stamps. Jones appealed this ruling to CORC which denied the appeal.

9. August 24, 1984. Jones filed a grievance about problems with the delivery of his mail. The IGRC rendered a split decision which Dalsheim affirmed.

10. August 27, 1984. Jones filed a grievance taking issue with an adjustment in the calculation of payroll. The IGRC issued a split decision, howver Dalsheim denied the grievance noting that the institution-wide adjustments at issue were being made in accordance with Department of Corrections policies and were not unique to Downstate.

11. August 27, 1984. Jones filed a grievance concerning the strip search procedures employed by the facility's security personnel after an inmate had a visit. The IGRC issued a split decision, and Dalsheim, upon review, denied the grievance, claiming that the facility did not offer otherwise adequate security.

---

**2.** These grievances are assigned formal grievance numbers by the institution. However, for the sake of clarity they are numbered 1 through 20 in this opinion and referred to as such throughout.

**3.** Jones' complaint also challenges the procedures followed by Rivenburgh during this disciplinary hearing. However, as stated above, as Rivenburgh is not a party to this motion, this will not be addressed in this opinion.

12. August 29, 1984. Jones filed a grievance claiming that the department engages in discrimination in its employment decisions. The IGRC investigated the grievance. However, Dalsheim denied the grievance stating that department practices were in compliance with the New York Civil Service Law.

13. August 30, 1984. Jones filed a grievance claiming that Fiske's handling of his discrimination grievance frustrated his right to file such grievances. The IGRC issued a split decision. However, Dalsheim denied the grievance on the ground that the office of supervisor was then empty with a change imminent.

14. August 31, 1984. Jones submitted a grievance complaining of breach of the confidentiality of grievance records. Dalsheim denied the grievance.

15. September 12, 1984. Jones filed a grievance claiming harassment from the grievance supervisor. The grievance was denied as moot because of the change in command.

16. October 11, 1984. Jones submitted a grievance requesting documentation of how monies for the care of inmates are allotted. This arose out of a reduction in bread and the unavailability of long sleeve shirts. The IGRC issued a split decision, however, there is no indication that Dalsheim ever rendered any decision on this grievance.

17. October 15, 1984. Jones filed a grievance claiming that Hunt denied him participation in the furlough and work release program in retaliation for previous grievances. After IGRC investigation, Dalsheim denied the request and affirmed Hunt's denial of furlough and work release.

18. October 24, 1984. Jones filed a grievance requesting revision of the rules and regulations permitting inmates to challenge the make-up of the IGRC. Jones claims that the IGRC accepted the grievance while the defendants contend there was a split decision. In any event, the result was forwarded to CORC, and it is unknown whether CORC ever acted on the proposal.

19. November 13, 1984. Jones filed a grievance requesting adherence to the regulation that cadre library clerks be permitted to make commissary purchases at a certain hour. The IGRC recommended adherence to the regulation, and acting Superintendent Shriver ("Shriver") accepted the grievance.

20. November 16, 1984. Jones filed a grievance complaining that he was prevented from rendering legal assistance to an inmate who was in keep-lock confinement. The IGRC recommended partial acceptance, and Shriver accepted the grievance.

Additionally, several of Jones' applications for temporary release were denied. He filed two temporary release applications while incarcerated at Green Haven. The first was filed on or about December 22, 1983. On January 16, 1984, the Temporary Release Committee notified him that they had approved him for temporary release. However, upon his review of the application, Scully recommended that the application be denied until after Jones' initial review by the parole board based on the nature of the crime for which Jones was convicted—hijacking a truck while holding the driver hostage at gunpoint. Jones was so notified on January 17, 1984. On February 23, 1984 Jones received a memorandum from Coughlin concurring with Scully's assessment. Jones' request for further review was denied.

While the December application was pending, Jones filed an application for a furlough. That application was denied allegedly because Jones' work release application was then under consideration.

On May 13, 1984, after his transfer to Downstate, Jones submitted another temporary release application along with several recommendations from Green Haven staff. On May 29, 1984, he was notified by the Temporary Release Committee, which was chaired by Hunt, that his application had been denied because he had "an extensive prior criminal record consisting of larcenous, drug and weapon charges. You failed to profit from 2 jail sentences and 1 prior state term. Your instant offense is a

violent felony offense that could have easily resulted [in] serious injury or death. The facility TRC is of the opinion that you represent a threat to community safety even given your conforming institutional record." Jones did not appeal this decision, purportedly because he felt he would not be granted relief in light of Coughlin's previous decision.

Jones applied again for temporary release on September 4, 1984. Again, for similar reasons, the application was denied. Jones appealed this denial. During the pendency of the appeal, Jones reapplied, and again the application was denied. However, the appeal of the September 4 application was granted, and Jones was transferred to a work release facility in January of 1985.

The denial of grievance, the substance of grievances and the denial of work release and furlough make up not only Jones' substantive claims, but also constitute the overt acts constituting the alleged conspiracy.

The Defendants filed a motion for summary judgment on these claims. This court heard oral argument and deemed the motion fully submitted on June 24, 1988.

*Discussion*

On a motion for summary judgment it is a court's duty to decide whether there is a genuine issue of fact necessitating trial. *Anderson v. Liberty*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11, (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The parties agree that this case is controlled by *Mount Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In that case, the Supreme Court set forth the standards for a claim of retaliation by a government entity based on exercise of constitutional rights. The Court stated that the initial burden is "properly placed upon [plaintiff]

to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor' " in the decision made regarding the plaintiff. The plaintiff "having carried that burden, however, the District Court should have gone on to determine whether the board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent[ ] ... even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576.

Although the Court in *Mount Healthy* was addressing the issue of a school board's failure to rehire a non-tenured teacher, courts of this circuit have applied similar reasoning to cases involving prisoners' rights both before and after *Mount Healthy*. These cases, generally involving transfer to other facilities, hold that action taken by prison officials which would otherwise be constitutional becomes unconstitutional if such action was taken as reprisal for the prisoner's exercise of constitutionally protected rights. *See, e.g., Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir.1984); *Hohman v. Hogan*, 597 F.2d 490 (2d Cir. 1979) (transfer and segregated confinement); *Haymes v. Montanye*, 547 F.2d 188 (2d Cir.1976) (on remand from Supreme Court, which held that there was no constitutional right to hearing before transfer, Second Circuit held that it was constitutionally impermissible to transfer in retaliation for exercise of constitutional rights), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977); *Hilliard v. Scully*, 648 F.Supp. 1479, 1487 (S.D.N.Y.1986); *Majid v. Henderson*, 533 F.Supp. 1257, 1270 (N.D.N.Y.), *aff'd*, 714 F.2d 115 (2d Cir. 1982).

■ To maintain a claim of retaliation for the exercise of constitutional rights, the prisoner bears the burden of proving that the action would not have been taken *but for* the exercise of such rights. *See Hilliard, supra*, 648 F.Supp. at 1487 (citing *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979)). If the undisputed facts "demonstrate that the challenged action would have been taken on the valid basis alone, and such a conclusion will frequently be

readily drawn in the context of prison administration where we have been cautioned to recognize that 'prison officials have broad administrative and discretionary authority over the institutions they manage,' " the court should find that the prisoner was not denied his constitutional right. *Sher, supra,* 739 F.2d at 82 (*quoting Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)).

Jones has not set forth that the actions taken by the defendants were in themselves violations of his constitutional rights [4] but that they constituted unconstitutional retaliation for his previous suit against them. To make out such a claim successfully, Jones must prove that each of the alleged offending actions would not have occurred but for his law suit.

*Grievances*

■ In the eight months he was at Downstate, Jones filed a total of twenty grievances, sometimes two in one day. He claims that these were systematically denied or untended to in retaliation for his prior suit and/or his status as a legal activist. However, while there is no question that Jones' prior suit and the filing are grievance are constitutionally protected acts, Jones has not sustained his burden of proving that the challenged action would not have been taken "but for" the exercise of these rights. Moreover, the defendants have provided other reasons which tend to prove that the denial of such grievance was a valid exercise of their administrative and discretionary authority.

First, Jones' grievances were not systematically denied. As numbered above, grievances 3 and 19 were accepted, 5, 8,[5] 9, and 20 were accepted in part, and 16 and 18 were not acted upon. Only eleven, or half plus one, of the grievances, 2, 4, 6, 7, 10,

11, 12, 13, 14, 15, and 17, were denied, and two of those were ultimately not denied by Dalsheim, but by CORC.

Grievance number 1, regarding Jones' placement in the kitchen as opposed to the law library, was informally resolved. Within four days of the filing of the grievance, Jones received the position he requested. Considering that the prison authorities took such prompt action to place Jones in the position of his choice, and considering there exists no independent right to the job of one's choosing, Jones cannot claim that his placement was retaliatory in the absence of further evidence to the contrary.

Additionally, the defendants have provided explanations for the denial of most of Jones' grievances. According to the defendants, grievance 2 was denied on the basis of conflicting evidence; grievances 4 and 7 were denied ultimately by CORC because Jones had not followed proper procedure; grievance 6 was denied because visitors would not be admitted if they were not identified on the visitors list; grievance 8 was denied in part because disciplinary procedures are not generally reviewable through inmate grievance procedures; grievance 10 was denied because the action complained of was due to department-wide adjustments and was beyond the control of the individual facility; grievance 11 was denied for security purposes; grievance 12 was denied based on professed adherence to the civil rights laws; grievances 13 and 15 were denied because they were challenges to the supervisor and he was in the process of being replaced; grievance 14 was denied because of the change of command with acknowledgment that the system would be investigated; and grievance 17 was denied as an affirmance of Hunt's decision regarding furlough and work re-

---

**4.** The possible exception to this is the tainted procedure in the disciplinary hearing conducted by Rivenburgh as set forth in grievance 8. However, Jones' complaint does not say this expressly. Moreover, as stated above, Rivenburgh is not a party to this motion. Although Dalsheim reviewed the action, he did reinstate Jones' stamp privileges and thus his ability to

communicate. Denial of commissary and package privileges does not, in itself, amount to a constitutional violation.

**5.** Note that although this grievance was granted in part, i.e. granting Jones stamp privileges, Jones followed up on this by appealing to CORC and considers it a denial.

lease.[6]

Jones does not offer any express challenge to the veracity of the reasons offered by the defendants for denying several of his grievances; he merely complains in a conclusory fashion that inadequate attention was given to the grievance, or that no resolution was ever achieved.[7] This does not sustain his burden of proving that the action would not have been taken "but for" the exercise of constitutional rights, and it does not overcome the presumption that administrative actions taken by prison officials are valid when they do not, in themselves, violate the constitution. *Sher*, 739 F.2d at 82. Moreover, it is worth noting that Jones' prior lawsuit did not name any Downstate personnel as defendants. Thus, if these defendants were retaliating against Jones by denying grievances, it would have to have been in retaliation for filing the grievances themselves.

Since Jones has offered no evidence tending to prove retaliation with respect to grievances—for example, that other inmates' similar grievances were granted while Jones' were denied—he has not raised a question of fact with respect to whether the exercise of his constitutional rights was a "motivating factor" in the denial of his grievances. *Mount Healthy, supra,* 429 U.S. at 287, 97 S.Ct. at 576. Summary judgment dismissing his claims with respect to the denial of grievances is therefore granted.

*Denial of Work Release and Furlough Privileges*

■ Pursuant to the Temporary Release Program Rules and Regulations, 7 NYCRR § 1900.4(c), an inmate is eligible for temporary release if he is within twelve months of possible parole or conditional release. Applicants are awarded points based on their application. Those with a total of 30 or more points are eligible, upon review, for participation in the furlough program, while those with 32 or more points are eligible, upon review, for participation in the work release program. 7 NYCRR § 1900.3 Jones contends that his applications for work release and furlough were denied both at Green Haven and at Downstate in retaliation for his legal activities.

Jones scored 34 points on his Green Haven Release application and was recommended for work release by the Temporary Release Committee. Nonetheless, Scully denied the application. Jones contends that the application was denied in retaliation for his previous successful litigation. The filing of that suit is a constitutionally protected act. Thus, Jones has satisfied his initial burden under *Mount Healthy.* 429 U.S. at 287, 97 S.Ct. at 576. In this instance, however, Jones has also raised a question of fact as to whether the suit was a motivating or "but for" factor in the denial. *Id.; McDonald v. Hall, supra,* 610 F.2d at 18; *Hilliard v. Scully, supra,* 648 F.2d at 1487; *Respress v. Coughlin;* 585 F.Supp. 854, 858 (S.D.N.Y.1984).

Scully claims that his decision to recommend denial of the application was based on Jones' criminal record, including both the offense he was incarcerated for at the time of the application and previous offenses. As stated above, Jones was serving time for hijacking a truck at gunpoint. His previous record consists of one felony conviction, namely possession of dangerous drugs, and four misdemeanor convictions. According to Scully, this record made Jones a danger to society regardless of his excellent prison record. Without more, Jones would fail to allege sufficient facts to meet his "but for" burden.

However, Jones has presented evidence that out of 111 cases where the Temporary Release Committee approved an application, only 11 were rejected by Scully. Each of those 11 involved crimes of serious physical violence and/or arrest records for crimes of serious violence and/or poor

---

6. The subject of furlough and work release will be treated independently below.

7. He does challenge the veracity of the processing officers pertained to in grievance 3. However, he does not challenge Dalsheim's authority *per se* to assess the credibility of the officers as opposed to Jones in determining whether Jones' guests were unfairly treated.

records during incarceration.[8] Since Jones' record is not comparable to those where Scully, and ultimately Coughlin, denied relief, the denial of Jones' application calls the defendants' intent into question.[9] Since "a district court should resist drawing fact inferences in summary judgment situation ... where, as here, intent is at issue," *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984), summary judgment will not be granted as to Scully and Coughlin on the issue of retaliation through denial of temporary release.

■ Jones has not sustained his burden with respect to the denial of his Downstate temporary release applications. Jones scored 35 points with respect to these applications. However, the Temporary Release Committee, chaired by Hunt, denied his applications. The reason stated for the denial was Jones' criminal history. Jones contends that the fact that this response echoed that of Scully, the reasons must be bogus.

However, Jones offers no facts to support that assumption. He further contends that Hunt's denial of his September application was in retaliation for grievances filed against Hunt. However, although Hunt's denial of Jones September application occurred subsequent to such a grievance, this would not offer any explanation for the denial of Jones's May application, a denial which came months before any grievance was filed against Hunt. Moreover, in contrast to the proof offered with respect to the Green Haven application,

namely, comparison with other cases, Jones has offered no proof tending to prove that he was treated differently from other applicants. In the absence of evidence that the denial would not have taken place but for the exercise of constitutional rights, Jones cannot sustain his claim with respect to the Downstate denial of work release. Summary judgment on this issue is therefore granted.

*Conspiracy and the Remaining Defendants*

As set forth above, Jones has not raised a question of fact pertaining to the Downstate defendants with respect either to grievances or to temporary release. Therefore, he has not raised an issue of fact as to their participation in any overt acts which serve to constitute a conspiracy. Therefore, summary judgment is granted dismissing all claims against Dalsheim, McGinnis, Fiske, and Hunt.

■ The question remains whether Jones may maintain a cause of action against Riley, Reynolds, Lord, and Straite, the remaining Green Haven defendants who allegedly acted contrary to Jones' rights more than three years prior to the filing of this suit. This court has already held that Jones' 42 U.S.C. § 1983 action pertaining to events occurring prior to December 29, 1983 is time barred. *See* 665 F.Supp. at 1044. It has additionally held that Jones cannot recover damages caused by overt acts occurring outside the limitations period. *Id.* at 1044–45.

---

8. The crimes involved in these application were murder, manslaughter, assault with a deadly weapon, and sexual assault, and often these inmates have committed one or more of these crimes. Only one application cited does not obviously involve serious injury to the victim. In that case, the inmate was serving a sentence for criminal possession of stolen property, namely a car, reckless endangerment by firing a loaded weapon at an unarmed middle-age woman, and attempted burglary. His criminal history consisted of six motor vehicle offenses, attempted burglary, and criminal mischief. In affirming the denial of release, Coughlin expressed concern that for all his time in incarceration, this inmate had made no attempt to partake of any self-improvement programs and had not attempted to gain insight into the causation of his repetitive criminal behavior. Jones, by

contrast, has done much to better himself while in prison.

9. It should be noted that Scully's recommended denial was a preliminary determination. His letter recommended that Jones not be considered for temporary release until after he was first reviewed by the parole board. That the parole board too saw fit to deny Jones' release may weaken Jones' "but for" argument if it could be shown that their reasons for denying release were legitimate. However, this court dismissed Jones' case against the parole defendants based on qualified immunity and not on the merits. Therefore, the information necessary to make this determination is not presently before the court.

Because the parties had not briefed the issue, the court expressed no decision as to whether a defendant could be held liable as a co-conspirator if he or she did not participate in any of the overt acts occurring within the limitations period. In *Kadar Corp. v. Milbury*, 549 F.2d 230, 235 (1st Cir.1977), the First Circuit held that defendants who had not participated in any overt acts occurring within the limitations period could not be held liable as conspirators. More recently, this district held that in the case of a civil conspiracy, "the act which begins the running of the limitations period is the formation of the conspiracy." *Blusal Meats, Inc. v. United States*, 638 F.Supp. 824, 829 (S.D.N.Y.1986), *aff'd*, 817 F.2d 1007 (2d Cir.1987). Accepting the reasoning of these courts, the case against Riley, Reynolds, Lord, and Straite must be dismissed as none of these defendants are alleged to have taken part in any acts occurring before December 23, 1983. Therefore their motion for summary judgment is granted.[10]

### State Law Claims

In Jones' seventh claim for relief, he seeks to recover for "larceny, theft of property, harassment, acting in concert to do physical and mental harm to another, using false charges to get a conviction, intentional infliction of emotional distress, malicious process and prosecution, negligence and gross negligence under the laws of the State of New York."

■ Under New York Civil Practice Law & Rules ("CPLR") § 215, actions for false imprisonment and malicious prosecution must be commenced within one year of their occurrence or they are time barred. Since Jones commenced this suit on December 29, 1986, and none of the events in question are alleged to have taken place later than December 29, 1985, Jones' actions for "using false charges to get a conviction," and "malicious process and prosecution" must be dismissed as time barred.

Moreover, this statute of limitations has been held to apply to all intentional torts such as intentional infliction of emotional distress, *Koster v. Chase Manhattan Bank, N.A.*, 609 F.Supp. 1191 (S.D.N.Y. 1985), and intentional property damage, *Felder v. Daley*, 403 F.Supp. 1324 (S.D.N.Y.1975). Thus, Jones state law claims for harassment, theft and destruction of property, and intentional infliction of emotional distress must also be dismissed as time barred.

■ Jones' remaining state law claims sound in negligence. Under CPLR § 214, an action to recover for such claims causing injury to person or property must be commenced within three years. Thus, all acts occurring outside the three year period, in this case all acts at Green Haven exclusive of the denial of temporary release are outside the limitations period and no cause of action may be maintained based thereon.

As stated above, Jones has stated no substantive cause of action arising out of the denial of grievances at Downstate. His claim was for intentional retaliation both for denial of grievances and for denial of temporary release. These claims alone cannot form the basis of a cause of action in negligence, and no other issues of fact with respect to negligence have been raised by Jones. Moreover, since the federal causes of action have been dismissed against the Downstate defendants, this court will not assert pendent jurisdiction over them.

Nor has Jones alleged any negligence rising out of the denial of his temporary release applications at Green Haven. His action there as well is for deliberate retaliation. Thus, Jones cannot maintain a state cause of action against Scully or Coughlin and summary judgment will be granted on this claim.

---

10. Defendants make the point that supervisory official can not be held liable under section 1983 without personal involvement. Citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct.

1282, 55 L.Ed.2d 792 (1978). However, here, both Scully and Coughlin are alleged to have dealt personally with Jones' case, and evidence raising questions of facts has been presented to that effect as is set forth above.

Defendants' motion for summary judgment is denied insofar as it pertains to Scully and Coughlin's denial of Jones' temporary release applications and is granted in all other respects.

It is so ordered.